FILED
2006 Feb-03  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS R. NICHOLSON, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 2:05CV2218-VEH** |
| **v.** | ) | |
| | ) | |
| **BEAR ROCK FOODS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This is a civil action filed by the plaintiffs, Thomas R. Nicholson, Julie M. Nicholson, and Nicholson Enterprises (collectively "Plaintiff") against Bear Rock Holdings, Inc., successor in interest to named defendant Bear Rock Foods, Inc., Bear Rock Franchise Systems, Inc., Gary Bryant, and five unknown defendants (collectively "Defendant"). This matter is before the court on Defendant's motion to dismiss for lack of subject matter jurisdiction.

For the reasons stated, Defendant's motion to dismiss is due to be **GRANTED**.

## Facts

Early in 2002, Plaintiff expressed an interest in investing in a Bear Rock Café restaurant, a franchise restaurant licensed by Defendant. (Complaint at ¶ 8). Based on this interest, the Defendant sent information to Plaintiff about the restaurant. *Id*.

1

On April 15, 2002, Plaintiff signed a Franchise agreement and an Area Development Agreement to invest in a Bear Rock Café franchise and made payments to defendant for the franchise.  (Complaint at ¶ 9). Plaintiff Nicholson Enterprises also signed two promisory notes and the other two Plaintiffs signed guaranties for these promisory notes. (Complaint at ¶ 12).

In December 2002, Plaintiff opened a Bear Rock Café.  (Complaint at ¶ 11). Plaintiff continued to make payments to Defendant for the franchise for over a year after the restaurant opened.  (Complaint at ¶ 11).  In May 2005, Plaintiff's restaurant closed.  (Complaint at ¶ 22). In September 2005, Plaintiff filed this action, alleging fraudulent misrepresentation (Complaint at ¶ 28), negligent misrepresentation (Complaint at ¶ 30), and detrimental reliance based on the Defendant's representations about the franchise agreements that Plaintiff signed. (Complaint at ¶ 32).  Plaintiff also alleged that the purported contracts signed for the franchise agreement were void for lack of consideration (Complaint at ¶ 34) and void under Alabama's door closing statute. (Complaint at ¶ 26).

## Standard of Review

It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.  *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986). Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two

forms: (1) "facial attacks" and (2) "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-1529 (11th Cir. 1990).

Facial attacks on the complaint demand "the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations of his complaint are taken as true for the purposes of this motion." *Id*.

Factual attacks "challenge the existence of subject matter jurisdiction on fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). On a factual attack on subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of a plaintiff's cause of action. *Id*.

## Analysis

This motion is a facial attack on this court's subject matter jurisdiction over the action. The Defendant's motion to dismiss relies on the arbitration clauses contained in the contracts signed by the Plaintiff as interpreted by applicable federal law. Under Federal Rule of Civil Procedure 10(c), a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. *See Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (quoting Federal Rule of Civil

Procedure 10(c)).  By considering the contracts attached to the complaint, the court is not considering any matters outside the complaint.  *See Id.*  Therefore, the allegations in the Plaintiff's complaint will be considered as true for the purposes of the present motion.

As part of the Franchise Agreement and Area Development Agreement, Plaintiff signed two identical arbitration agreements.  These arbitration clauses state:

> [A]ny controversy, claim or dispute arising out of or relating to the Restaurant, this Agreement, or its breach, including without limitation any claim that this Agreement or any of its parts is invalid, illegal, or otherwise voidable or void, shall be submitted to arbitration....  [A]ll issues relating to arbitrability or the enforcement of the agreement to arbitrate contained herein shall be governed by the Federal Arbitration Act....

(Complaint at Ex. A, § 10.1, pg. 30 & Ex. B, § 9.1, pg. 5).

Thus, the terms of the arbitration agreement explicitly state that disputes over the legality of the franchise agreement should be arbitrated.  A later part of the arbitration agreements adds that the arbitration should occur in Raleigh, North Carolina "so long as franchisor's principal office is located in metropolitan Raleigh, North Carolina...." (Complaint at Ex. A, § 10.3, pg. 30 & Ex. B, § 9.3, pg. 5).  Since neither party disputes that the Defendant's principal office is located there, this court must conclude that the arbitration should take place in Raleigh.

As the arbitration clause makes clear, the Federal Arbitration Act ("the Act")

4

governs the arbitration agreement.  Section 2 of the Federal Arbitration Act states:

> A written provision in...a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract..., or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract...shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Section 3 of the Act gives the procedure for a Federal District Court to follow when an action is filed on an issue which two parties have agreed to arbitrate:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under any agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, shall...stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

The above provisions of the Act constrain this court's discretion in the present case.  In enacting section 2 of the Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  There are only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration

Act: "they must be part of...a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon such grounds as exist in law or in equity for the revocation of any contract.'"  *Id*. at 10-11.

Reviewing the record, this court is satisfied that the arbitration clauses are enforceable under the Act.  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent  of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 874 (11th Cir. 2005) *quoting Citizens Bank v. Alfabaco, Inc*., 539 U.S. 52, 56 (2003).  The Court has further explained the phrase "evidencing a transaction" means only that the transaction turns out, in fact, to have involved interstate commerce, "even if the parties did not contemplate an interstate commerce connection."  *Jenkins*, 400 F.3d at 874 *quoting Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277-81 (1995).  In this case, the Defendant is based out of North Carolina and the Plaintiff is located in Alabama.  (Complaint at ¶¶ 1-4). The contract involved the North Carolina Defendants' licensing a franchise to the Alabama Plaintiffs. (Complaint at ¶ ¶ 7-9).  Applying the Supreme Court's broad interpretation of the Act, the contract involves commerce between Alabama and North Carolina and is enforceable under the Act.

Plaintiff alleges in the complaint that the contracts are void *ab initio* under Alabama's door closing statute, Ala. Code § 10-2B-15.02(a) (1975), and for lack of consideration.  However, Plaintiffs specifically agreed to arbitrate "any claim that this Agreement or any of its parts is invalid, illegal, or otherwise voidable or void." (Complaint at Ex. A, § 10.1, pg. 30 & Ex. B, § 9.1, pg. 5).  By its terms, the Act leaves no place for the exercise of discretion by a federal court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  The parties' intent determines the claims that are arbitrable, and the court looks to the wording of the arbitration clause and gives all provisions of the contract their full effect.  *Harris v. Palm Harbor Homes, Inc*., 198 F.Supp.2d 1303, 1305 (M.D. Ala. 2002).  Thus, because the terms of the arbitration clause cover the Plaintiff's arguments challenging the validity of the contract, this court has no choice but to dismiss the action so that it may be arbitrated in accordance with the agreement's terms.

The Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395 (1967), dictates that, where a party (like the Plaintiff in this case) challenges the validity of an underlying agreement and not just an arbitration clause in an agreement, an arbitrator should decide whether the agreement is valid or not. In

7

that case, the Supreme Court noted that, under Section 4 of the Act, "with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.'" *Id*. at 403.  The allegation in that case was that the defendant fraudulently induced the plaintiff into signing a contract. The Court reasoned that if the fraudulent inducement concerned the arbitration clause itself then the federal court could adjudicate it, but if the fraudulent inducement concerned the entire agreement then an arbitrator should decide it.  *Id.* at 403-404. The Court held that in passing upon a Section 3 (of the Federal Arbitration Act) application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. *Id*. at 404.

There is also Eleventh Circuit precedent that mandates that an arbitrator and not this court should hear Plaintiffs' arguments.  In *Bess v. Check Express*, 294 F.3d 1298 (11th Cir. 2002), customers brought an action against check cashing companies in connection with check advances and deferred payment transactions.  As part of the transactions, the customers signed an agreement to arbitrate any dispute they might have relating to the transaction.  After the customers filed suit in federal court, the

defendants moved to compel arbitration based on the arbitration agreement. The plaintiffs countered this motion to compel by arguing, among other things, that some of the transactions were void *ab initio* under Alabama law and that the district court should decide this issue. The Eleventh Circuit, relying on *Prima Paint*, stated that because the plaintiffs' allegations of illegality go to the deferred payment transactions generally, and not to the arbitration agreement specifically, it would appear that an arbitrator should decide those questions. *Id.* at 1305. The court also noted that, under its prior holding in *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, under "normal circumstances" where "an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration..., the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the contract *in general*." *Bess*, 294 F.3d at 1305, *quoting Chastain,* 957 F.2d at 854 (emphasis in original).

Similarly, in *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868 (2005), the Eleventh Circuit was again confronted with customers suing check cashing companies over payday lending transactions. The customers signed arbitration clauses agreeing to resolve "all disputes" by binding arbitration. *Id.* at 872. The customers filed suit in Georgia state court, and the defendants removed the case to federal court. The defendants then moved to compel arbitration and the

plaintiffs opposed the motion, arguing that the agreement was unconsionable and void *ab initio*. The Court held that plaintiff's unconscionability claims went to the entire agreement and that "[i]f...[the party's] claims of adhesion, unconscionability,...and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration."  *Id*. at 877, *quoting  Benoay v. Prudential-Bache Secs., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986). The court noted that "[a]t bottom, [plaintiff] challenges the *content* of the contracts, not their *existence*." *Id*. at 882  (emphasis in original). The Court concluded that the plaintiff's "void ab initio argument, which challenges the legality of the payday lending transactions, is an issue for the arbitrator, not the court to decide." *Id*.

The Plaintiff's allegations in this case go to the validity of the agreement as a whole, not just to the arbitration clause, and therefore arbitration, not this court, is the proper forum for adjudication. Plaintiff alleges that the contract itself is void for lack of consideration (Complaint at ¶ 34) , fraudulent and negligent misrepresentation (Complaint at ¶ ¶ 28, 30) , and because the Defendant failed to obtain a certificate of authority to transact business in Alabama before the contract was signed.  (Complaint at ¶ 26).  At no point does Plaintiff allege that the arbitration clause itself is invalid. Furthermore, the contracts are signed by both parties and Plaintiff admits in the

complaint to signing the contract and paying money to the Defendant at the time of signing.  (Complaint at ¶¶ 7, 9).  Thus, Plaintiff here, like the plaintiff in *Bess* and *Jenkins*, is challenging the content of the contract and not its existence.  Furthermore, this case falls under the "normal circumstances" noted in *Bess* because there is a signed contract with an arbitration clause sufficient to direct this court to send any dispute to arbitration; therefore the parties have presumptively agreed to arbitrate whether the agreement itself exists.  Under the Supreme Court precedent in *Prima Paint* and the Eleventh Circuit precedent in *Bess* and *Jenkins*, arbitration is the proper forum for this action.

This court must dismiss the case because the arbitration clause mandates arbitration in a foreign state.  Normally, Section 4 of the Federal Arbitration Act would require this court to stay the action pending arbitration.  That section provides:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, *shall be within the district in which the petition for an order directing such arbitration be filed*.

9 U.S.C. § 4 (emphasis added).

Section 4 thus facially mandates that two conditions be met before a district court may compel arbitration: (1) that the arbitration be held in the district in which the court sits; and (2) that the arbitration be held in accordance with the agreement of the parties. *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 330 (5th Cir. 1987). The parties in this case have agreed to arbitration in Raleigh, North Carolina, which is outside this court's district. (Complaint at Ex. A, § 10.3, pg. 30 & Ex. B, § 9.3, pg. 5). Accordingly, this court lacks the power to compel arbitration and must instead dismiss the action so that arbitration may be had in the proper forum.

### Conclusion

For the reasons stated, the court finds that Defendants' Motion to dismiss (doc. 6) is due to be **GRANTED**. A separate Order will be entered.

**DONE** and **ORDERED** this 3rd day of February, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge